IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GLEN A. WILLIAMS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 99-J-662-S |
| H. BRUCE WRIGHT, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Currently before the Court is Defendants' Motion for Summary Judgment (doc. 20) to which Plaintiff has filed a brief in opposition. Having considered said motion, the briefs in support and in opposition to said motion, and the Court being of the opinion that no genuine issues of material fact exist, said motion is for the reasons set out below, due to be GRANTED. Furthermore, the Court being of the opinion that oral argument would not substantially assist the Court in making it's determination, Plaintiff's request for oral argument is DENIED.

## Undisputed Facts

Plaintiff began working for Defendant Jefferson County Board of Education ("the Board") as a seasonal worker in 1975. Testimony of Glen A. Williams, Employee

Review Panel Hearing ("Williams Testimony") at 8. In 1977, he began working full-time. Williams Testimony at 9. Sometime in 1993, he was promoted to a supervisory position as co-manager of the maintenance department. Williams Testimony at 11. In this capacity, Plaintiff was responsible for the heating and air conditioning, electrical, paint, energy management systems and portable classrooms. Williams Testimony at 15-16.

In 1996, Dr. Bruce Wright, as superintendent of the Jefferson County Board of Education, hired Mr. Bob Nations to perform crisis management work for the Board. Deposition of Dr. Bruce Wright ("Wright Depo.") at 46-47, 83. During the course of Mr. Nations' work, Mr. Nations reported to Dr. Wright rumors of potential wrongdoing within Plaintiff's department. Wright Depo. at 47. These rumors dealt with the purchasing practices in the maintenance department; specifically, Dr. Wright was told that items were being purchased that did not actually exist and that Plaintiff had been receiving payment from a company in exchange for doing business with them. Wright Depo. at 55-56, 60. In response to these rumors, Dr. Wright enlisted the Jefferson County Sheriff's Office to fully investigate this matter.[1]

---

[1] The motivation behind including the Sheriff's office in the investigation is in dispute. Plaintiff maintains Dr. Wright's request for an investigation by law enforcement was politically motivated in retaliation for Plaintiff's open support for candidates who opposed Dr. Wright. Plaintiff's Brief in Opposition ("Plaintiff's Opp.") at 1. Dr. Wright maintains the Sheriff's Office was contacted to "get to the bottom of the rumors" and determine if "there had been some possible violations of the law." Wright Depo. at 48, 50, 51, Defendants' Brief in Support of Summary Judgment ("Defendants' Brief") at 3. Regardless of the motivation behind the

The Sheriff's Office eventually notified the Federal Bureau of Investigation who in turn conducted a six to eight month preliminary investigation into this matter. Wright Depo. at 48. At the conclusion of this investigation, it was recommended that the Board conduct a full-scale investigation. Wright Depo. at 60-61. On March 21, 1997, following the FBI recommendation of a full-scale investigation, Dr. Wright placed Plaintiff on paid administrative leave and told Plaintiff not to come on the premises of the Board or to participate in any school district activities.[2] Defendants' Exh. 3. Two other individuals who were implicated by the investigation were put on paid administrative leave as well.

The day after Plaintiff was placed on administrative leave, Dr. Wright released a statement to the press, notifying the press of the investigation. Defendants' Brief at 3; Exh. 14. Dr. Wright's statement stated that no determination had been made that any laws had been broken or that any one person was responsible for the transactions under review. *Id.* In two news articles printed after the publication of this release, Plaintiff and the two other individuals who were put on administrative leave were named as having been questioned by the FBI and placed on leave pending the outcome of the investigation. Plaintiff's Exh. 7, 8.

On November 19, 1998, Dr. Wright sent a letter to Plaintiff informing him that the

---

Sheriff's Office's involvement, the fact these rumors existed and were investigated by Mr. Nations, Sheriff's Office and FBI is not in dispute.

[2] Plaintiff later requested and was granted leave to attend his children's school functions.

3

Board had proposed to terminate Plaintiff's employment.[3] Defendants' Exh. 5. The reasons stated for this proposed termination were: failure to perform his duties in a satisfactory manner, incompetency, neglect of duty and other good and just cause. *Id.* Plaintiff disputes this reasoning, arguing instead that is was merely pretextual and that Plaintiff really was fired for exercising his First Amendment rights by supporting candidates who opposed Dr. Wright. *See* Plaintiff's Opposition at 1.

## **Standard of Review**

Summary judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of proof on such motion. *See Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1294 (11th Cir. 1998)(*citing Celotex* 477 U.S. at 323).

If the summary judgment movant satisfies its initial burden of production, the

---

[3] At the time this complaint was filed Plaintiff had not been terminated, though Dr. Wright had made that recommendation to the Board. Plaintiff has failed to amend his complaint to include the fact he was terminated. Though both the brief in support and in opposition to summary judgment address Plaintiff's termination and dispute the grounds thereof, counsel for both parties have informed the Court that this cause of action is wholly separate from the termination issue. Accordingly, the Court does not address the decision to terminate or subsequent termination of Plaintiff by the Board.

burden of proof shifts to the nonmovant who must demonstrate that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. Once the nonmovant has adduced evidence of a genuine issue of material fact, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Gonzalez,* 161 F.3d at 1294 (*citing Anderson*, 477 U.S. at 255.).

### Legal Analysis

Plaintiff has stated six causes of action in his complaint. In Count I, Plaintiff maintains generally that Wright retaliated against him because of Plaintiff's political activities. Complaint at ¶ 16. Also in Count I, Plaintiff makes a claim against the Board for failure to supervise and/or set out policies or guidelines to address the actions of Defendant Wright. Complaint at ¶ 17. In Count II, Plaintiff alleges Defendant Wright

deprived him of his property interest in his tenured position by denying him the opportunity to perform his job as well as in his good name and character by making public statements regarding the investigation. Complaint at ¶¶ 20, 21. Again, Plaintiff makes a claim against the Board for failure to supervise. Complaint at ¶ 22. Count III states a general claim against the Board for failure to supervise and failure to train Defendant Wright. Complaint at ¶ 26. Counts IV and VI state claims under the common low torts of wrongful intrusion and outrage, respectively. Complaint at ¶¶ 30, 40. Finally, in Count V of the Complaint, Plaintiff specifically alleges Wright retaliated against Plaintiff by making the recommendation to the board that Plaintiff be terminated. Complaint at ¶ 34. Once again, Plaintiff includes in this count a claim against the Board for failure to supervise. Complaint at ¶ 37.

The Court has considered all of the evidence in the light most favorable to Plaintiff and finds that Plaintiff has failed to raise any genuine issues of material fact for a jury to decide.

Plaintiff's Retaliation Claim:

In Count I of his complaint, Plaintiff alleges he was retaliated against in response to his exercising his rights of free speech and freedom of association as secured by the First Amendment of the United States Constitution. Plaintiff's Opposition at 4. Plaintiff maintains the criminal investigation and his subsequent placement on paid administrative leave was motivated by Dr. Wright's animosity toward Plaintiff's support of Leslie B.

Helton for the position of superintendent as well as various other candidates for the Board itself whom Helton supported. Plaintiff brings these claims under 42 U.S.C. § 1983.

Under *Bryson v. Waycross,* 888 F.2d 1562 (11th Cir. 1989), the Court must apply a four-part test to claims of retaliatory discharge for exercising First Amendment rights. *Beckwith v. City of Daytona Beach Shores, Florida,* 58 F.3d 1554, 1563-64 (11th Cir. 1995). Those elements are (1) whether the speech involves a matter of public concern; (2) whether the employees interest in speaking outweighs the government's legitimate interest in efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the government would have made the same employment decision in the absence of the protected conduct. *Bryson,* 888 F.2d at 1565-66 (citations omitted). *See also Mize v. Jefferson County Board of Education,* 93 F.3d 739, 742 (11th Cir. 1996); *Bevill v. UAB Walker College,* 62 F.Supp.2d 1259, 1284 (N.D. Ala. 1999).

Because the defendants have not argued to the contrary, the Court assumes the first two prongs of the above test are met and that Plaintiff's political activities in support of school board candidates in entitled to First Amendment protection. The third and fourth prong of the *Bryson* test are questions designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision. *Beckwith,* 58 F.3d at 1564. In the third element, Plaintiff must produce enough evidence to "make a showing sufficient to permit a reasonable jury to find that his protected speech was a substantial or

7

motivating factor" in his placement on leave. *Gattis v. Brice,* 136 F.3d 724, 726 (11th Cir. 1998). Plaintiff's burden is not a heavy one; purely circumstantial evidence, taken in the light most favorable to Plaintiff, can create a jury question on the issue of motive. *See Beckwith,* 58 F.3d at 1564-65. However, purely speculative evidence can not satisfy this burden.

The completely speculative nature of the evidence regarding the part Plaintiff's political activities may have played a role in his placement on administrative leave requires this Court to find that the allegations against Plaintiff relating to the accounting discrepancies in the department over which Plaintiff was in control, and not his political activities, motivated Dr. Wright. The only evidence Plaintiff points to in support of his allegations are either based on hearsay or statements he overheard but that were not directed toward him.

Plaintiff testified that he overheard Defendant Wright saying to someone unknown to Plaintiff that "the election is over" and that "paybacks will be hell."[4] Wright Testimony at 28-29. The fact Plaintiff overheard a conversation between Defendant Wright and another individual is too loose an association between Plaintiff's involvement in the elections and his placement on paid administrative leave. An inference simply can

---

[4] Plaintiff also offers the testimony of Dr. Leslie Helton that Defendant Wright passed out large nails to *all* in attendance, identified them as coffin nails and said in substance "they did not have enough nails to put in my casket; it's turn around time" the Court notes that this statement was made during a meeting of all division and area superintendents, and thus not a meeting where Plaintiff was present.

8

not be made from an overheard statement, with no evidence the threat was real or directed toward Plaintiff. This proof is simply too speculative and does not rise to a level sufficient to sustain Plaintiff's burden on the third prong.

Plaintiff then offers hearsay evidence wherein Mike Wheatley told Plaintiff that Defendant Wright had told him [Mike Wheatley] to "dig up some dirt" on Plaintiff. Williams Testimony at 20. The Court is barred from considering such evidence as it is inadmissible under the Federal Rules of Evidence. In so far as the Court notes this statement, it further notes Plaintiff in one instance asks the Court to find Mr. Wheatley's hearsay credible and then in the next instance testifies Mr. Wheatley was involved in the campaign to retaliate against him. Williams Depo. at 55.

Finally, the Court finds persuasive the fact that this argument of retaliation was made and rejected at a hearing contesting Plaintiff's termination. *See* Hearing Officer's Decision; Defendant's Motion at Exh. 8. The Hearing Officer's Decision clearly finds that the reason Plaintiff was put on paid administrative leave was because of the investigation by the FBI. *Id.* Citing the difficulties of engaging in an investigation and maintaining the evidence and isolating those under investigation from the daily affairs of the Board, the Hearing Officer found the decision to place Plaintiff on paid administrative leave a legitimate, non-political, non-retaliatory action. *Id.* In holding such evidence persuasive, the Court makes this determination under the third, and not the fourth prong of the *Bryson* analysis, finding only that the Hearing Officer's decision that the evidence

presented by the Defendant constituted a legitimate, non-retaliatory reason belies the Plaintiff's assertion under the third prong in the case at bar that his political activity was a substantial or motivating factor for his termination.

Accordingly, Plaintiff has failed to meet his burden under the third prong of the *Bryson* analysis. Specifically, this Court finds that Plaintiff's support of candidates other than Dr. Wright or those who opposed Dr. Wright as a superintendent, did not play a substantial or motivating part in the decision to place Plaintiff on paid administrative leave.

In consideration of the foregoing, the Court finds that the defendant's motion for summary judgment on Count I of Plaintiff's complaint is due to be GRANTED.

Plaintiff's Due Process Claims:

Plaintiff asserts he was deprived of both property and liberty interests in violation of his right to due process as secured by the Fourteenth Amendment. Plaintiff brings these claims under 42 U.S.C. § 1983.

*Plaintiff's alleged deprivation of his property rights.*

Plaintiff alleges several of Defendants' actions violated his Fourteenth Amendment rights. Specifically, Plaintiff maintains he was deprived of his property interest in his tenured position when he was placed on paid administrative leave and therefore unable to perform his job. *See* Williams Testimony at 67; Complaint at ¶ 21.

Plaintiff also maintains he was denied the opportunity to attend his children's school events or functions. Complaint at ¶ 21.

In *McKinney v. Pate,* 20 F.3d 1550, 1560-62 (11th Cir. 1994), the Eleventh Circuit clearly and unequivocally held that employment rights which are non-fundamental state created rights, as opposed to fundamental right created by the Constitution, are not entitled to substantive due process protection. Because the rights allegedly infringed upon are not fundamental rights and accordingly not entitled to substantive due process protection, the Court will address only Plaintiff's procedural due process claims.

Plaintiff's position being tenured, Plaintiff has a property interest in his job under Alabama Teachers Tenure Act. This does not mean that he has a property interest in not being placed on paid administrative leave. Plaintiff's income and benefits were not affected by his suspension. The major effect his suspension had on Plaintiff was that he was not performing services in exchange for his pay and benefits. However, Plaintiff does not have a constitutionally protectible property interest in actually performing the duties of his position. *See Gray v. Board of Regents of University System,* 150 F.3d 1347, 1350 (11th Cir. 1998); *cert. denied,* 119 S.Ct. 1455, 143 L.Ed.2d 542 (1999). Because Plaintiff has no constitutionally protected right to actually perform the duties of his position, it is unnecessary for the Court to determine whether there was a violation of due process in placing him on administrative leave with pay.

Plaintiff's next contention in Count II is that he was deprived of his right to attend

11

his children's school functions. The Court does not indulge in the analysis of whether this "right" is actionable. Rather, the Court notes that even if the right to attend your children's school functions is an actionable property interest, Plaintiff can not argue he was denied due process in remedying any injury to this right. The record clearly indicates that the day after Plaintiff complained that his being placed on leave affected his ability to participate in his children's school functions, the Board lifted the broad prohibition against being on school property by excepting those times when Plaintiff's children were involved in a school-related function. Williams Testimony at 241; Deposition of Glen A. Willliams ("Williams Depo.") at 66. Such prompt remedial attention belies the assertion that Plaintiff was denied an opportunity to attend these functions without due process, as the Board retracted this condition virtually the moment Plaintiff requested such an opportunity.

In light of the foregoing, Plaintiff has no claim against either the Board or Dr. Wright for denial of the opportunity to perform his job or attend his children's school functions as such actions do not deprive Plaintiff of an actionable property interest.

*Plaintiff's alleged deprivation of a liberty interest.*

Finally, Plaintiff argues Dr. Wright's public statements regarding Plaintiff's suspension subjected Plaintiff to stigmatization and public ridicule and constitutes a deprivation of his liberty interest under the Fourteenth Amendment. With regards to this alleged deprivation of his liberty interest, the Court finds he has failed to state a claim.

In order to state a claim for the deprivation of a liberty interest, Plaintiff must show (1) a stigmatizing allegation; (2) dissemination or publication of that allegation; and (3) loss of some tangible interest due to the publication of the stigmatizing allegation. *Paul v. Davis,* 424 U.S. 693, 701; 96 S.Ct. 115; 47 L.Ed.2d 405 (1976); *see also Bank of Jackson Co. v. Cherry,* 980 F.2d 1362, 1367 (11th Cir. 1992), *cert. denied,* 510 U.S. 819 (1993)*(citations omitted).* Plaintiff alleges Wright's public statements regarding Plaintiff's suspension subjected him to stigmatization and public ridicule. In support of this allegation, Plaintiff has offered into evidence two newspaper articles that name him personally and includes allegations of wrongdoing. *See* Plaintiff's Exh. 7, 8. These articles mention the fact that Plaintiff was interviewed by the FBI as well as the fact Plaintiff had been placed on administrative leave. *Id.* The Court finds these articles sufficient to meet Plaintiff's burden under the first and second prongs of this analysis.

In support of the third prong of this analysis, Plaintiff argues the stigmatism of being implicated in the investigation as well as the public ridicule and placement on paid administrative leave constitutes a lost tangible interest. Eleventh Circuit precedent is clear that a protected liberty interest is at stake if there is a stigmatizing allegation made in conjunction with a discharge. *Thomas v. Harvard,* 45 F.Supp.2d 1353, 1354 (N.D. Ga. 1999)*(citing Moore v. Otero,* 557 F.2d 435, 438 (5th Cir.1977); *Dennis v. S & S Consolidated Rural H.S. Dist.,* 577 F.2d 338, 342 (5th Cir.1978)); *see also Hardiman v. Jefferson County Board of Education,* 709 F.2d 635, 638 (11th Cir. 1983). Here, however,

there was no discharge; Plaintiff was placed on paid administrative leave, retaining his full pay and benefits. Because Plaintiff remained an employee and continued to receive full pay and benefits at the time this action was filed, Plaintiff has failed to show the loss of some tangible interest and accordingly has failed to state a claim for the deprivation of a constitutionally protected liberty interest.

In consideration of the foregoing, the Court finds that Defendants' motion for summary judgment on Count II is due to be GRANTED as there are no existing issues of material fact and Plaintiff's claim fails as a matter of law.

Plaintiff's Failure to Train/ Supervise Claim:

Plaintiff's third count of his complaint additionally alleges that the Board itself failed to properly train or supervise Dr. Wright in order to prevent him from retaliating against Plaintiff. Complaint at ¶ 22. Because the Court has already found, *supra*, that no retaliation occurred, this court finds it does not need to consider whether the alleged retaliation was the result of the Board's failure to properly train or supervise Dr. Wright. In consideration of the foregoing, the court finds that Defendants motion for summary judgment on Count III of Plaintiff's complaint is due to be GRANTED.[5]

---

[5] Plaintiff makes this claim generally in Count III and specifically in every other enumerated count. As Plaintiff has failed to show any retaliatory conduct or violation of his due process rights by and through Defendant Wright, the Court now GRANTS Defendants' motion for summary judgment as to all claims against the Jefferson County Board of Education.

Plaintiff's Retaliation Claim based on Wright's Recommendation for Termination:

After an investigation into the allegations made against Plaintiff, Defendant Wright recommended to the Board that Plaintiff be terminated. Plaintiff, in Count V of his Complaint alleges this recommendation was actually made in retaliation for Plaintiff's involvement in various political campaigns. The Court finds this Count to be virtually indistinguishable from the complaint made in Count I. In Count I, Plaintiff did not limit the time frame to acts by Wright against Plaintiff prior to Wright's recommendation for termination. Accordingly, the Court viewed the facts in their entirety to determine whether retaliatory motive was the driving force behind the actions of Dr. Wright. In it's analysis, the Court found no such motive.

Assuming arguendo retaliatory motive could be found in the instigation of a criminal investigation of Plaintiff on the part of Wright, the fact that two separate and independent law enforcement agencies found enough credible evidence to continue on with their own investigation proves detrimental to Plaintiff's claim in Count V. If the Court were to assume improper motive for the commencement of the investigation, that fact does not change the results of the investigation. Finding the results of the investigation to be more than sufficient to meet Defendants' burden in proving that Wright's decision to recommend termination would have been the same absent Plaintiff's political activities, the Court finds that Plaintiff has failed to state a claim for retaliation.

Based on the foregoing, the Court finds that the defendants' motion for summary

15

judgment is due to be GRANTED on Count V of the complaint.

Plaintiff's State Law Claims:

Counts IV and VI of Plaintiff's Complaint allege state common law tort actions for wrongful intrusion and outrage. While this Court has supplemental jurisdiction over Plaintiff's state claims for invasion of privacy and the tort of outrage pursuant to 28 U.S.C. § 1367(a), this Court declines to exercise jurisdiction over these remaining claims. Because resolution of Plaintiff's state law claims depends on determinations of state law, those claims are best resolved by Alabama courts. *See Baggett v. First National Bank of Gainesville,* 117 F.3d 1342, 1353 (11th Cir. 1997). Plaintiff's state law claims are therefore DISMISSED WITHOUT PREJUDICE.

### Conclusion

Based on the foregoing, the Court GRANTS Defendants' motion for summary judgment. A separate order in conformity with said opinion will be issued contemporaneously herewith.

**DONE** and **ORDERED** this __5__ day of May, 2000.

_Inge P. Johnson_ (signature)
Inge P. Johnson
U.S. District Judge